JS 44 (Rev. 12/12)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS

Damian Smith, Lisa Gregory, Gary Robinson, Mia McNeil, Rozina Williams, Juvar Woodson, Rodney Morgan, Joyce Robinson, Baron Adams, Franklin Stewart, Askim Deloach, Cyrus Davis and Leroy Black

## DEFENDANTS

City of Philadelphia, PO Jeffrey Walker, PO Louis Cujdik, PO Jackson and PO Vargas

**(b)** County of Residence of First Listed Plaintiff  Philadelphia
*(EXCEPT IN U.S. PLAINTIFF CASES)*

County of Residence of First Listed Defendant    Philadelphia
*(IN U.S. PLAINTIFF CASES ONLY)*
NOTE:       IN LAND CONDEMNATION CASES, USE THE LOCATION OF
THE TRACT OF LAND INVOLVED.

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*
Val Pleet Wilson, Esquire, One South Broad- Suite 1830, Philadelphia, PA (215) 988-9277 and Eric F. Spade,Esquire, One South Broad - Suite 1830, Philadelphia, PA  (215) 772-0600

Attorneys *(If Known)*
Unknown

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

☐ 1  U.S. Government
Plaintiff

☒ 3  Federal Question
*(U.S. Government Not a Party)*

☐ 2  U.S. Government
Defendant

☐ 4  Diversity
*(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff*
*(For Diversity Cases Only)* *and One Box for Defendant)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☒ 1 | ☒ 1 | Incorporated *or* Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated *and* Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance<br>☐ 120 Marine<br>☐ 130 Miller Act<br>☐ 140 Negotiable Instrument<br>☐ 150 Recovery of Overpayment & Enforcement of Judgment<br>☐ 151 Medicare Act<br>☐ 152 Recovery of Defaulted Student Loans (Excludes Veterans)<br>☐ 153 Recovery of Overpayment of Veteran's Benefits<br>☐ 160 Stockholders' Suits<br>☐ 190 Other Contract<br>☐ 195 Contract Product Liability<br>☐ 196 Franchise | **PERSONAL INJURY**<br>☐ 310 Airplane<br>☐ 315 Airplane Product Liability<br>☐ 320 Assault, Libel & Slander<br>☐ 330 Federal Employers' Liability<br>☐ 340 Marine<br>☐ 345 Marine Product Liability<br>☐ 350 Motor Vehicle<br>☐ 355 Motor Vehicle Product Liability<br>☐ 360 Other Personal Injury<br>☐ 362 Personal Injury - Medical Malpractice | **PERSONAL INJURY**<br>☐ 365 Personal Injury - Product Liability<br>☐ 367 Health Care/ Pharmaceutical Personal Injury Product Liability<br>☐ 368 Asbestos Personal Injury Product Liability<br>**PERSONAL PROPERTY**<br>☐ 370 Other Fraud<br>☐ 371 Truth in Lending<br>☐ 380 Other Personal Property Damage<br>☐ 385 Property Damage Product Liability | ☐ 625 Drug Related Seizure of Property 21 USC 881<br>☐ 690 Other | ☐ 422 Appeal 28 USC 158<br>☐ 423 Withdrawal 28 USC 157<br><br>**PROPERTY RIGHTS**<br>☐ 820 Copyrights<br>☐ 830 Patent<br>☐ 840 Trademark<br><br>**SOCIAL SECURITY**<br>☐ 861 HIA (1395ff)<br>☐ 862 Black Lung (923)<br>☐ 863 DIWC/DIWW (405(g))<br>☐ 864 SSID Title XVI<br>☐ 865 RSI (405(g)) | ☐ 375 False Claims Act<br>☐ 400 State Reapportionment<br>☐ 410 Antitrust<br>☐ 430 Banks and Banking<br>☐ 450 Commerce<br>☐ 460 Deportation<br>☐ 470 Racketeer Influenced and Corrupt Organizations<br>☐ 480 Consumer Credit<br>☐ 490 Cable/Sat TV<br>☐ 850 Securities/Commodities/ Exchange<br>☐ 890 Other Statutory Actions<br>☐ 891 Agricultural Acts<br>☐ 893 Environmental Matters<br>☐ 895 Freedom of Information Act<br>☐ 896 Arbitration |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | **LABOR** | **FEDERAL TAX SUITS** | ☐ 899 Administrative Procedure |
| ☐ 210 Land Condemnation<br>☐ 220 Foreclosure<br>☐ 230 Rent Lease & Ejectment<br>☐ 240 Torts to Land<br>☐ 245 Tort Product Liability<br>☐ 290 All Other Real Property | ☒ 440 Other Civil Rights<br>☐ 441 Voting<br>☐ 442 Employment<br>☐ 443 Housing/ Accommodations<br>☐ 445 Amer. w/Disabilities Employment<br>☐ 446 Amer. w/Disabilities Other<br>☐ 448 Education | **Habeas Corpus:**<br>☐ 463 Alien Detainee<br>☐ 510 Motions to Vacate Sentence<br>☐ 530 General<br>☐ 535 Death Penalty<br>**Other:**<br>☐ 540 Mandamus & Other<br>☐ 550 Civil Rights<br>☐ 555 Prison Condition<br>☐ 560 Civil Detainee - Conditions of Confinement | ☐ 710 Fair Labor Standards Act<br>☐ 720 Labor/Management Relations<br>☐ 740 Railway Labor Act<br>☐ 751 Family and Medical Leave Act<br>☐ 790 Other Labor Litigation<br>☐ 791 Employee Retirement Income Security Act<br><br>**IMMIGRATION**<br>☐ 462 Naturalization Application<br>☐ 465 Other Immigration Actions | ☐ 870 Taxes (U.S. Plaintiff or Defendant)<br>☐ 871 IRS—Third Party 26 USC 7609 | ☐ 950 Constitutionality of State Statutes |

## V. ORIGIN *(Place an "X" in One Box Only)*

☒ 1 Original Proceeding  ☐ 2 Removed from State Court  ☐ 3 Remanded from Appellate Court  ☐ 4 Reinstated or Reopened  ☐ 5 Transferred from Another District *(specify)*  ☐ 6 Multidistrict Litigation

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
42 USC Section 1983
Brief description of cause:
Section 1983 Civil Rights; Malicious Prosecution; False Arrest

## VII. REQUESTED IN COMPLAINT:

☐ CHECK IF THIS IS A CLASS ACTION UNDER RULE 23, F.R.Cv.P.

DEMAND $

CHECK YES only if demanded in complaint:
JURY DEMAND:  ☒ Yes  ☐ No

## VIII. RELATED CASE(S) IF ANY

*(See instructions):*    JUDGE _____  DOCKET NUMBER _____

DATE
02/25/2015

SIGNATURE OF ATTORNEY OF RECORD

**FOR OFFICE USE ONLY**

RECEIPT # _____  AMOUNT _____  APPLYING IFP _____  JUDGE _____  MAG. JUDGE _____

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

### CASE MANAGEMENT TRACK DESIGNATION FORM

Damian Smith       :       CIVIL ACTION

v.       :

City of Philadelphia, et al       :       NO.

In accordance with the Civil Justice Expense and Delay Reduction Plan of this court, counsel for plaintiff shall complete a Case Management Track Designation Form in all civil cases at the time of filing the complaint and serve a copy on all defendants. (See § 1:03 of the plan set forth on the reverse side of this form.)  In the event that a defendant does not agree with the plaintiff regarding said designation, that defendant shall, with its first appearance, submit to the clerk of court and serve on the plaintiff and all other parties, a Case Management Track Designation Form specifying the track to which that defendant believes the case should be assigned.

## SELECT ONE OF THE FOLLOWING CASE MANAGEMENT TRACKS:

(a) Habeas Corpus – Cases brought under 28 U.S.C. § 2241 through § 2255.       ( )

(b) Social Security – Cases requesting review of a decision of the Secretary of Health and Human Services denying plaintiff Social Security Benefits.       ( )

(c) Arbitration – Cases required to be designated for arbitration under Local Civil Rule 53.2.       ( )

(d) Asbestos – Cases involving claims for personal injury or property damage from exposure to asbestos.       ( )

(e) Special Management – Cases that do not fall into tracks (a) through (d) that are commonly referred to as complex and that need special or intense management by the court. (See reverse side of this form for a detailed explanation of special management cases.)       ( )

(f) Standard Management – Cases that do not fall into any one of the other tracks.       (X)

| 2/25/15 | Val Pleet Wilson, ESO | Plaintiffs |
|---|---|---|
| **Date** | **Attorney-at-law** | **Attorney for** |
| 215 888-9271 | (215) 888 1580 | vpw@wilsonJohnson.com |
| **Telephone** | **FAX Number** | **E-Mail Address** |

(Civ. 660) 10/02

## UNITED STATES DISTRICT COURT

**FOR THE EASTERN DISTRICT OF PENNSYLVANIA — DESIGNATION FORM** to be used by counsel to indicate the category of the case for the purpose of assignment to appropriate calendar.

Address of Plaintiff: _Philadelphia, PA_

Address of Defendant: _1515 Arch Street Philadelphia, Pa 19102_

Place of Accident, Incident or Transaction: _Philadelphia_

(Use Reverse Side For Additional Space)

Does this civil action involve a nongovernmental corporate party with any parent corporation and any publicly held corporation owning 10% or more of its stock?

(Attach two copies of the Disclosure Statement Form in accordance with Fed.R.Civ.P. 7.1(a))    Yes☐    No☑

Does this case involve multidistrict litigation possibilities?    Yes☐    No☑

*RELATED CASE, IF ANY:*

Case Number: _12-5690_    Judge _Diamond_    Date Terminated: _____

Civil cases are deemed related when yes is answered to any of the following questions:

1. Is this case related to property included in an earlier numbered suit pending or within one year previously terminated action in this court?

    Yes☐    No☑

2. Does this case involve the same issue of fact or grow out of the same transaction as a prior suit pending or within one year previously terminated action in this court?

    Yes☐    No☑

3. Does this case involve the validity or infringement of a patent already in suit or any earlier numbered case pending or within one year previously terminated action in this court?

    Yes☐    No☑

4. Is this case a second or successive habeas corpus, social security appeal, or pro se civil rights case filed by the same individual?

    Yes☐    No☑

CIVIL: (Place ✔ in ONE CATEGORY ONLY)

A. *Federal Question Cases:*

1. ☐ Indemnity Contract, Marine Contract, and All Other Contracts
2. ☐ FELA
3. ☐ Jones Act-Personal Injury
4. ☐ Antitrust
5. ☐ Patent
6. ☐ Labor-Management Relations
7. ☑ Civil Rights
8. ☐ Habeas Corpus
9. ☐ Securities Act(s) Cases
10. ☐ Social Security Review Cases
11. ☐ All other Federal Question Cases
    (Please specify) _____

B. *Diversity Jurisdiction Cases:*

1. ☐ Insurance Contract and Other Contracts
2. ☐ Airplane Personal Injury
3. ☐ Assault, Defamation
4. ☐ Marine Personal Injury
5. ☐ Motor Vehicle Personal Injury
6. ☐ Other Personal Injury (Please specify)
7. ☐ Products Liability
8. ☐ Products Liability — Asbestos
9. ☐ All other Diversity Cases
    (Please specify) _____

## ARBITRATION CERTIFICATION

*(Check Appropriate Category)*

I, _Val Pleet Wilson_ , counsel of record do hereby certify:

☐ Pursuant to Local Civil Rule 53.2, Section 3(c)(2), that to the best of my knowledge and belief, the damages recoverable in this civil action case exceed the sum of $150,000.00 exclusive of interest and costs;

☐ Relief other than monetary damages is sought.

DATE: _2/25/15_    _Val Pleet Wilson, ESQ_    _25787_

Attorney-at-Law    Attorney I.D.#

**NOTE:** A trial de novo will be a trial by jury only if there has been compliance with F.R.C.P. 38.

I certify that, to my knowledge, the within case is not related to any case now pending or within one year previously terminated action in this court except as noted above.

DATE: _2/25/15_    _Val Pleet Wilson, Esq_    _25787_

Attorney-at-Law    Attorney I.D.#

CIV. 609 (5/2012)

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF PENNSYLVANIA

DAMIAN SMITH, and                  :
                                   :
LISA GREGORY, and                  :
                                   :
GARY ROBINSON, and                 :
                                   :
MIA MCNEIL, and                    :
                                   :
ROZINA WILLIAMS, and               :    CIVIL ACTION
                                   :    NO.
JUVAR WOODSON, and                 :
                                   :
RODNEY MORGAN, and                 :
                                   :
JOYCE ROBINSON, and                :    RELATED CASE: 12-5690-PD
                                   :
BARON ADAMS, and                   :
                                   :
FRANKLIN STEWART, and              :    TRIAL BY JURY DEMANDED
                                   :
ASKIM DELOACH, and                 :
                                   :
CYRUS DAVIS, and                   :
                                   :
LEROY BLACK,                       :
                                   :
        *Plaintiffs*,              :
                                   :
v.                                 :
                                   :
CITY OF PHILADELPHIA,              :
Claims Unit,                       :
1515 Arch Street, 15th Floor,      :
Philadelphia, PA  19102, and,      :
                                   :
POLICE OFFICER                     :

**JEFFREY WALKER (BADGE NO. 3730),**     :
**Individually and as a former Police**     :
**Officer for the City of Philadelphia, and**     :
                                                                     :
**POLICE OFFICER**                                           :
**LOUIS CUJDIK (BADGE NO. 1574),**        :
**Individually and as a former Police**     :
**Officer for the City of Philadelphia, and**     :
                                                                     :
**POLICE OFFICER**                                           :
**JACKSON (BADGE NO. 2645)**                :
**Individually and as a former Police**     :
**Officer for the City of Philadelphia, and**     :
                                                                     :
**POLICE OFFICER**                                           :
**VARGAS (BADGE NO. 4097)**                  :
**Individually and as a former Police**     :
**Officer for the City of Philadelphia,**     :
                                                                     :
_____***Defendants***_____:

## COMPLAINT

Plaintiffs Damian Smith, Lisa Gregory, Gary Robinson, Mia McNeil, Rozina Williams, Juvar Woodson, Rodney Morgan, Joyce Robinson, Baron Adams, Franklin Stewart, Askim Deloach, Cyrus Davis, and Leroy Black, by and through their attorneys, Eric F. Spade, Esquire, and Val Pleet Wilson, Esquire, do hereby file this Complaint and aver the following:

## I.     JURISDICTION

1.     This action is brought pursuant to 42 U.S.C. § 1983 and the Fourth Amendment to the United States Constitution.

2.     Jurisdiction is proper under 28 U.S.C. §§ 1331 and 1343(1), (3), (4) and the aforementioned statutory and constitutional provisions.

2

3.      Jurisdiction over state law claims based on supplemental jurisdiction is proper under 28 U.S.C. § 1367.

4.      The amount in controversy, exclusive of interest and costs, exceeds the sum of Seventy-Five Thousand ($75,000.00) Dollars.

## II.      VENUE

5.      All the claims herein arose within the jurisdiction of the United States District Court for the Eastern District of Pennsylvania and involve Defendants who reside within the jurisdiction limits.  Accordingly, venue is proper under 28 U.S.C. § 1391(b) and (c).

## III.      PARTIES

6.      Plaintiff Damian Smith is an adult individual citizen of the Commonwealth of Pennsylvania and resident of Philadelphia County, Pennsylvania.

7.      Plaintiff Lisa Gregory is an adult individual citizen of the Commonwealth of Pennsylvania and resident of Philadelphia County, Pennsylvania.

8.      Plaintiff Gary Robinson is an adult individual citizen of the Commonwealth of Pennsylvania and resident of Philadelphia County, Pennsylvania.

9.      Plaintiff Mia McNeil is an adult individual citizen of the Commonwealth of Pennsylvania and resident of Philadelphia County, Pennsylvania.

10.      Plaintiff Rozina Williams is an adult individual citizen of the Commonwealth of Pennsylvania and resident of Philadelphia County, Pennsylvania.

11.      Plaintiff Juvar Woodson is an adult individual citizen of the Commonwealth of Pennsylvania and resident of Philadelphia County, Pennsylvania.

12.    Plaintiff Rodney Morgan is an adult individual citizen of the Commonwealth of Pennsylvania and resident of Philadelphia County, Pennsylvania.

13.    Plaintiff Joyce Robinson is an adult individual citizen of the Commonwealth of Pennsylvania and resident of Philadelphia County, Pennsylvania.

14.    Plaintiff Baron Adams is an adult individual citizen of the Commonwealth of Pennsylvania and resident of Philadelphia County, Pennsylvania.

15.    Plaintiff Franklin Stewart is an adult individual citizen of the Commonwealth of Pennsylvania and resident of Philadelphia County, Pennsylvania.

16.    Plaintiff Askim Deloach is an adult individual citizen of the Commonwealth of Pennsylvania and resident of Philadelphia County, Pennsylvania.

17.    Plaintiff Cyrus Davis is an adult individual citizen of the Commonwealth of Pennsylvania and resident of Philadelphia County, Pennsylvania.

18.    Plaintiff Leroy Black is an adult individual citizen of the Commonwealth of Pennsylvania and resident of Philadelphia County, Pennsylvania.

19.    Defendant City of Philadelphia is a municipality organized by and through the Commonwealth of Pennsylvania and was the public employer of the individual defendant police officers.

20.    Defendant Jeffrey Walker (Badge No. 3730) was at all times relevant to this Complaint, employed as a police officer for the City of Philadelphia and was acting under the color of state law.  He is being sued in both his individual and official capacities.

21.    Defendant Louis Cujdik (Badge No. 1574) was at all times relevant to this Complaint, employed as a police officer for the City of Philadelphia and was acting

under the color of state law. He is being sued in both his individual and official capacities.

22.     Defendant Jackson (Badge No. 2645) was at all times relevant to this Complaint, employed as a police officer for the City of Philadelphia and was acting under the color of state law. He is being sued in both his individual and official capacities.

23.     Defendant Michael Vargas (Badge No. 4097) was at all times relevant to this Complaint, employed as a police officer for the City of Philadelphia and  was acting under the color of state law. He is being sued in both his individual and official capacities.

## IV.     GENERAL STATEMENT OF FACT

24.     On or about May 22, 2013, Defendant Walker was arrested and charged in the United States District Court for the Eastern District of Pennsylvania for acts including, inter alia, "by means of actual or threatened force or violence or fear of injury, immediate and future to the victim's person, and by use of a firearm; and by use of his position as a Philadelphia Police Officer, did obtain personal property, cash and marijuana unlawfully . . ."

25.     The criminal complaint against Defendant Walker describes how he disclosed to an FBI informant:

a.  his prior acts to rob drug dealers of both drugs and money;

b.  his prior acts of stealing drugs from drug dealers and misreporting the amount he actually confiscated;

c.  his prior acts of planting drugs in a drug dealer's car so he could arrest the drug dealer,  take the drug dealer's keys, and then use the drug dealer's keys to  enter the drug dealer's     apartment and steal money.

26.     On or about May 21, 2013, Defendant Walker used the FBI informant in carrying out a scheme to steal $15,000 from a drug dealer by planting cocaine in the drug dealer's car, taking the drug dealer's key's, and then using the drug dealer's keys to enter the drug dealer's apartment and steal money.

27.     On or about May 22, 2013, the Philadelphia Police Department suspended Defendant Walker, and eventually, he was terminated for misconduct.

28.     On February 24, 2014, Defendant Walker pled guilty in federal court to attempted robbery that inferred with interstate commerce and carrying a firearm during and in relation to a crime of violence.

29.     The conduct of Officer Walker in this case was uncovered by the federal government, not by the Philadelphia Police Department.

30.     In July 2014, six additional members of the narcotics unit were indicted in federal court-- Thomas Liciardello, Brian Reynolds, Michael Spicer, Perry Betts, Linwood Norman, and John Speiser.

31.     Former narcotics unit officer Thomas Liciardello was charged in federal court for RICO conspiracy, conspiracy to deprive of civil rights, deprivation of civil rights, Hobbs Act robbery, carrying a firearm during a crime of violence, and falsification of records.

32.    Former narcotics unit officer Brian Reynolds was charged in federal court for RICO conspiracy, Hobbs Act robbery, carrying a firearm during a crime of violence, falsification of records, and Hobbs Act extortion.

33.    Former narcotics unit officer Michael Spicer was charged in federal court for RICO conspiracy, conspiracy to deprive of civil rights, deprivation of civil rights, Hobbs Act robbery, carrying a firearm during a crime of violence, and Hobbs Act extortion.

34.    Former narcotics unit officer Perry Betts was charged in federal court for RICO conspiracy, conspiracy to deprive of civil rights, Hobbs Act robbery, carrying a firearm during a

crime of violence, and falsification of records.

35.    Former narcotics unit officer Linwood Norman was charged in federal court for RICO conspiracy, conspiracy to deprive of civil rights, Hobbs Act robbery, carrying a firearm during a crime of violence, falsification of records, and possession with intent to distribute over 500 grams of cocaine.

36.    Former narcotics unit officer John Speiser was charged in federal court for RICO conspiracy and falsification of records.

37.    On July 31, 2014, Philadelphia Police Commissioner Charles Ramsey acknowledged the federal indictment of these six Philadelphia narcotics unit police officers during a public press conference.

38.    During his press conference, Police Commissioner Charles Ramsey admitted that, "one of the issues, that I've had discussions about and hopefully we get some relief, our contract doesn't allow for rotation, doesn't allow for transfer of

individuals, its incidents like this that hopefully will give us what we need to change that. We need to be able to move people from these sensitive situations like this if there is any hint at all that they are engaging in this type of misconduct."

39.    Prior to November 3, 2004, and through at least December 31, 2011, Defendant City of Philadelphia developed and maintained policies and/or customs exhibiting deliberate indifference to the constitutional rights of persons in the City of Philadelphia, which caused the violation of Plaintiffs' rights.

40.    Since the 1980s, there has been a history of Philadelphia Police Officers engaging in rampant illegal conduct in narcotics investigations.

41.    In 1988, six former members of the narcotics unit known as the Five Squad were indicted for selling drugs that they had stolen from drug dealers.

42.    A few years later, eight police officers in the 39th Police District pled guilty to a scheme of illegally searching, falsely arresting, and stealing drugs and money from suspected drug dealers.

43.    In 1995, Philadelphia Police Officers John Baird and five other members of the 39th Police District were federally prosecuted for violating the individual rights and stealing money in more than 40 cases.

44.    A 1998 internal affairs finding that veteran narcotics officer John Boucher, who retired in 1996, was a potentially corrupt Philadelphia Police officer.

45.    In the mid-1990s, the American Civil Liberties Union (ACLU), the National Association for the Advancement of Colored People (NAACP), and the Police-Barrio Relations Project filed civil rights suits against the City of Philadelphia.

46.    The ACLU-NAACP-Police Bario suits arose out of the investigation into corruption and misconduct in the 39th Police District.

47.    In September 1996 a settlement was reached in the ACLU-NAACP-Police Bario cases, which included the creation of an independent and "permanent" Integrity & Accountability Office (IAO) "to analyze and critique accountability and corruption control policies, to identify systemic deficiencies that give rise to or permit corruption and misconduct within the Police Department, and to make recommendations for change." IAO Report on Personnel Management, Sept. 1998, at 2.

48.    Beginning in 1997, the Director of the Integrity & Accountability Office (IAO) issued regular reports based on their comprehensive study of the policies and practices of the Philadelphia Police Department.

49.    The reports identified specific deficiencies within the Police Department and then recommended specific changes to address the deficiencies.

50.    The September 1998 IAO Report on Personnel Management, in relevant part, states:

a.  the absence of department wide uniform set of standards for use by sergeants when making assessment of police officer performance; and

b.  the absence of any supervisor accountability during the review of the evaluation process in the Department.

IAO Report on Personnel Management, Sept. 1998, at 34-36.

51.    The March 2001 IAO Report on the Disciplinary System, in relevant part, states:

a. "[I]t is not uncommon for a year, in some cases several years, to elapse from the date of the infraction until the disciplinary matter is ultimately resolved."

b. "A haphazard and unmonitored selection process for PBI Board members diminishes the value and effectiveness of this important role in the Department, and contributes to chronic inconsistency in case dispositions."

c. "[A] pervasive lack of detail and documentation contributes to a disciplinary system that is in many respects inscrutable, and one that does not operate by measurable, auditable, consistent standards."

IAO Report on Disciplinary System, March 2001, at 32, 36, 40.

52. The July 2002 IAO Enforcement of Narcotics Laws Enforcement Report, in relevant part, states:

a. Current labor contract terms prevent transfers except for formally documented disciplinary reasons or "for purposes of essential manpower requirements."

b. "The longer narcotics officers remain in this assignment, the more dependent they become on this overtime income to accommodate their adjusted lifestyles."

c. "It is critical that term limits in the Narcotics Bureau be initiated and enforced on a regular basis."

d. "Effective supervisory oversight is a critical component in maintaining the integrity of narcotics enforcement agencies."

e.  "The Department has no formal or consistent policy regarding the rotation of narcotics supervisors."

f.  "Since supervisor's names do not appear on the arrest reports and they are not required to maintain activity/patrol logs... It is virtually impossible to monitor the degree of supervisory interaction with their squads and platoons."

IAO Report on Enforcement of Narcotics Laws, July 2002, at 40, 42-44.

53.    The December 2003 Disciplinary System Report found that:

a.  The disciplinary system in the Philadelphia police department remains fundamentally ineffective, inadequate, and unpredictable; and

b.  The disciplinary system will never be adequately reformed as long as it remains solely within the prerogative of the Philadelphia police department.

IAO Report on Disciplinary System, December 2003, at 5-7.

54.    "The disciplinary system in the Philadelphia Police Department remains fundamentally ineffective, inadequate, and unpredictable." IAO Report on Disciplinary System, December 2003, at 7.

55.    More recently, the Philadelphia Police Department has been plagued by cases where Philadelphia Police Officers have been involved in stealing, dealing drugs, lying under oath, tampering with evidence and other misconduct.

56.    On February 7, 2011, Philadelphia Police Officer James Venziale pled guilty in federal court to conspiracy and dealing heroin.

57.    On February 7, 2011, Philadelphia Police Officer Robert Snyder pled guilty in federal court to conspiracy and dealing heroin.

58.     On March 4, 2011, Philadelphia Police Officer Mark Williams was found guilty by a jury in federal court of conspiracy to steal and deal heroin.

59.     On June 15, 2011, Philadelphia Police Officer Sean Alivera pled guilty to robbery, conspiracy, kidnapping, official oppression, and drug possession with intent to deliver.

60.     On June 15, 2011, Philadelphia Police Officer Christopher Luciano pled guilty to robbery, conspiracy, kidnapping, official oppression, and drug possession with intent to deliver.

61.     On August 24, 2011, Philadelphia Police Officer Joseph McIntyre pled guilty in federal court to conspiracy and dealing steroid drugs.

62.     Philadelphia Police Officer Christopher Hulmes has been a member of the narcotics unit since 2000.

63.     Officer Hulmes has admitted that he lied under oath on a search-warrant application and while testifying at a December 2011 preliminary hearing.

64.     In May 2012, Philadelphia Police Officer George Sambuca pled guilty in federal court to conspiracy and dealing steroid drugs.

65.     On October 9, 2012, Philadelphia Detective Keith Gidelson pled guilty in federal court to conspiracy and dealing steroid drugs.

66.     In June 2012, Philadelphia Police Officer Jonathan Garcia was charged in federal court with conspiracy to steal and deal heroin.

67.     In June 2012, Philadelphia Police Officer Sydemy Joanis was charged in federal court with conspiracy to steal and deal heroin.

68.     On July 5, 2013, Police Officer Gerald Gibson, in the narcotics unit, was charged with theft and tampering with evidence.

69.     On December 3, 2013, Philadelphia Police Officer Richard Cordero was convicted in federal court of obstructing a federal drug investigation.

70.     During the past decade, the Defendant Officers in this case had numerous civil rights violations alleged against them.

71.     The Philadelphia Police Department repeatedly returned the Defendant Officers to duty despite the pattern of numerous civil rights violations alleged against them.

**COUNT I**
**Plaintiff Damian Smith**
**42 U.S.C. § 1983**
**Against Defendant Officers Jeffrey Walker and Louis Cujdik**
*Malicious Prosecution*

72.     All preceding paragraphs are fully incorporated herein by specific reference as though fully set forth.

73.     On or about November 3, 2004, Plaintiff Damian Smith was lawfully present in the neighborhood of the 200 block of Race Street, Philadelphia, Pennsylvania.

74.     Shortly thereafter, Defendant Officer Walker, Defendant Officer Cujdik, and another plain clothed Philadelphia police officer approached and searched Plaintiff Damian Smith.

75.     The Defendant Officers alleged that Plaintiff Damian Smith was involved in a drug transaction based in a nearby Philadelphia residence.

76.    The Defendant Officers Walker and Cujdik then entered the residence alleging the occurrence of illegal drug related activity.

77.    The Defendant Officers Walker and Cujdik then planted drugs inside the residence and alleged that they belonged to Smith.

78.    Damian Smith, who had not violated any laws of the Commonwealth of Pennsylvania or any other jurisdiction, was arrested and transported to a police district where she was arraigned on the following charges:

a.    Manufacture, delivery, or possession with intent to deliver a controlled substance, pursuant to 35 P.S. §780-113; and

b.    Intentional possession of a controlled substance by a person not registered to possess the controlled substance, pursuant to 35 P.S. §780-113.

79.    The Defendant Officers Walker and Cujdik prepared and caused to be prepared police paperwork misrepresenting the events that led to the arrest of the Plaintiff Damian Smith for the incident described in this complaint.

80.    The Defendant Officers Walker and Cujdik were aware of exculpatory information about Smith.

81.    The exculpatory information known to police that was not provided to Smith included the real facts and circumstances of the incident.

82.    The Defendant Officers Walker and Cujdik misrepresented the events that led to the arrest of Damian Smith, and the misrepresentations were intentional, malicious, in bad faith, recklessly indifferent and deliberately indifferent to Damian Smith's rights.

83.    The Defender Association of Philadelphia represented Damian Smith in her criminal proceeding.

84.    After a preliminary hearing, Smith's case was held over for trial, and she pled guilty to the manufacture, delivery, or possession with intent to manufacture or deliver a controlled substance.

85.    Smith served three years probation and was assessed $6,927.68 in fines, court fees, and probation fees for this conviction.

86.    As a result of Defendant Walker's activities as described above and his subsequent suspension, Damian Smith's criminal case was *nolle prossed* by the Philadelphia District Attorney's Office on November 8, 2013.

87.    As a direct and proximate result of the Defendants' actions, Damian Smith was deprived of her rights, privileges and immunities under the Fourth, Fifth and Fourteenth Amendments to the United States Constitution and, in particular, the right to be free from excessive force, the right to be free from unlawful arrest, the right to be free from unjustified searches, the right to be free from malicious prosecution, and the right to due process of law.

WHEREFORE, Plaintiff Damian Smith demands judgment against Defendant Officers Jeffrey Walker and Louis Cujdik in the amount of all damages, including compensatory damages and punitive damages, plus interest, injunctive relief, such other relief as appears reasonable and just.

**COUNT II**
**Plaintiff Damian Smith**
**Supplemental State Law Claim**
**Against Defendant Officers Jeffrey Walker and Louis Cujdik**
***Malicious Prosecution***

15

88.    All preceding paragraphs are fully incorporated herein by specific reference as though fully set forth.

89.    Plaintiff Damian Smith was damaged and injured as set forth above by Defendant Officers Walker and Cujdik in that they intentionally and unlawfully instituted criminal proceedings against Plaintiff without probable cause and with malice.

90.    The criminal proceedings were terminated in favor of Damian Smith.

91.    Defendants' conduct was the direct and proximate cause of Plaintiff's harm.

WHEREFORE, Plaintiff Damian Smith demands judgment against Defendant Officers Jeffrey Walker and Louis Cujdik in the amount of all damages, including compensatory damages and punitive damages, plus interest, injunctive relief, such other relief as appears reasonable and just.

### COUNT III
### Plaintiff Damian Smith
### 42 U.S.C. § 1983
### Against Defendant City of Philadelphia

92.    All preceding paragraphs are fully incorporated herein by specific reference as though fully set forth.

93.    Plaintiff Damian Smith was damaged and injured as set forth above under 42 U.S.C. §1983 by Defendant City of Philadelphia in that its Police Officers, as described in detail in preceding paragraphs, engaged in police misconduct in violation of Plaintiff's constitutional rights while acting under color of law.

94.    Prior to November 3, 2004, Defendant City of Philadelphia developed and maintained policies and/or customs of police misconduct exhibiting deliberate

indifference to the constitutional rights of persons in the City of Philadelphia, which caused the violation of Plaintiff's rights.

95.    It was the policy and/or custom of Defendant Police Officers to engage while on-duty in criminal conduct, including but not limited to official oppression, perjury, false swearing, unsworn falsification to authorities, false incrimination of others, fictitious reports, tampering with or fabricating physical evidence, tampering with public records or information, intimidation of witnesses or victims, retaliation against witnesses or victims, falsification of police documents, obstruction of administration of law, robbery, theft by unlawful taking, theft by extortion, theft by deception, theft from a motor vehicle, receiving stolen property, illegal searches, unlawful restraint, kidnapping, false imprisonment, criminal coercion, illegal asset forfeiture, excessive use of force, assault and battery, harassment, and criminal conspiracy.

96.    It was the policy and/or custom of Defendant City of Philadelphia to insufficiently supervise, train and/or re-train, and/or discipline against the police misconduct set forth in this Complaint.

97.    It was the policy and/or custom of Defendant City of Philadelphia to inadequately supervise, train, and discipline its Police Officers, including the Defendant Police Officers, against a code of silence or "blue code" of Police Officers refusing to intervene against or provide truthful information against constitutional violations and other unlawful misconduct committed by their fellow Police Officers.

98.    The present and past Philadelphia Police Commissioners and Deputy Commissioners with policy-making authority had actual knowledge and/or constructive knowledge of the policies and customs of Philadelphia Police Department failing to

sufficiently supervise, train and/or re-train, and discipline against the police misconduct set forth in this Complaint.

99.    As a result of the above-described policies and customs and/or the lack thereof, Police Officers of the City of Philadelphia, including the Defendant Police Officers, believed that their actions would not be properly monitored by supervisory Officers and that misconduct would not be investigated or sanctioned, but would be tolerated.

WHEREFORE, Plaintiff Damian Smith demands judgment against Defendant City of Philadelphia in the amount of all damages, including compensatory damages and punitive damages, plus interest, injunctive relief, such other relief as appears reasonable and just, as well as reasonable attorney fees and costs under 42 U.S.C. §1988.

**COUNT IV**
**Plaintiff Lisa Gregory**
**42 U.S.C. § 1983**
**Against Defendant Officer Jeffrey Walker**
***Malicious Prosecution***

100.    All preceding paragraphs are fully incorporated herein by specific reference as though fully set forth.

101.    On or about July 13, 2005, Plaintiff Lisa Gregory was present inside a residence in Philadelphia, Pennsylvania.

102.    On or about the same time, Defendant Officer Walker and other Philadelphia police officers executed a raid of the same residence.

103.    Defendant Officer Walker then planted drugs inside of the residence and alleged that they belonged to Lisa Gregory.

104.    Plaintiff Lisa Gregory, who had not violated any laws of the Commonwealth of Pennsylvania or any other jurisdiction, was arrested and transported to a police district where she was arraigned on the following charges:

a.  Manufacture, delivery, or possession with intent to manufacture or deliver a controlled substance, pursuant to 35 P.S. §780-113; and

b.  Intentional possession of a controlled substance by a person not registered to possess the controlled substance, pursuant to 35 P.S. §780-113.

105.    The Defendant Officer Walker and other Philadelphia police officers prepared and caused to be prepared police paperwork misrepresenting the events that led to the arrest of the Plaintiff Lisa Gregory for the incident described in this complaint.

106.    The Defendant Officers were aware of exculpatory information about the Plaintiff Lisa Gregory.

107.    The exculpatory information known to police that was not provided to Lisa Gregory included the real facts and circumstances of the incident.

108.    The Defendant Officer Walker misrepresented the events that led to the arrest of Lisa Gregory and the misrepresentations were intentional, malicious, in bad faith, recklessly indifferent and deliberately indifferent to Lisa Gregory's rights.

109.    The Defender Association of Philadelphia represented Lisa Gregory in her criminal proceeding.

110.    After a preliminary hearing, Gregory's case was held over for trial, and she pled guilty to the manufacture or possession with intent to manufacture or deliver a controlled substance.

111.   Lisa Gregory served three years probation and was assessed $1,001.44 in court fees for this conviction.

112.   As a result of Defendant Walker's activities as described above and his subsequent suspension, Lisa Gregory's criminal case was *nolle prossed* by the Philadelphia District Attorney's Office on September 26, 2014.

113.   Plaintiff was damaged and injured as set forth above under 42 U.S.C. §1983 by Defendant Officers in that they, as described in detail in preceding paragraphs, violated Plaintiff's constitutional rights while acting under color of law.

114.   More specifically, Defendant Officers seized and arrested Lisa Gregory, and instituted criminal proceedings against Lisa Gregory without probable cause and with malice.

WHEREFORE, Plaintiff Lisa Gregory demands judgment against Defendant Officer Jeffrey Walker in the amount of all damages, including compensatory damages and punitive damages, plus interest, injunctive relief, such other relief as appears reasonable and just, as well as reasonable attorney fees and costs under 42 U.S.C. §1988.

### COUNT V
**Plaintiff Lisa Gregory**
**Supplemental State Law Claim**
**Against Defendant Officer Jeffrey Walker**
***Malicious Prosecution***

115.   All preceding paragraphs are fully incorporated herein by specific reference as though fully set forth.

116.    Plaintiff Lisa Gregory was damaged and injured as set forth above by Defendant Officer Walker in that he intentionally and unlawfully instituted criminal proceedings against Plaintiff without probable cause and with malice.

117.    The criminal proceedings were terminated in favor of Lisa Gregory.

118.    Defendant Walker's conduct was the direct and proximate cause of Plaintiff's harm.

WHEREFORE, Plaintiff Lisa Gregory demands judgment against Defendant Officer in the amount of all damages, including compensatory damages and punitive damages, plus interest, injunctive relief, such other relief as appears reasonable and just.

**COUNT VI**
**Plaintiff Lisa Gregory**
**42 U.S.C. § 1983**
**Against Defendant City of Philadelphia**

119.    All preceding paragraphs are fully incorporated herein by specific reference as though fully set forth.

120.    Plaintiff Lisa Gregory was damaged and injured as set forth above under 42 U.S.C. §1983 by Defendant City of Philadelphia in that its Police Officers, as described in detail in preceding paragraphs, engaged in police misconduct in violation of Plaintiff's constitutional rights while acting under color of law.

121.    Prior to July 13, 2005, Defendant City of Philadelphia developed and maintained policies and/or customs of police misconduct exhibiting deliberate indifference to the constitutional rights of persons in the City of Philadelphia, which caused the violation of Plaintiff's rights.

122.    It was the policy and/or custom of Defendant Police Officers to engage while on-duty in criminal conduct, including but not limited to official oppression, perjury,

false swearing, unsworn falsification to authorities, false incrimination of others, fictitious reports, tampering with or fabricating physical evidence, tampering with public records or information, intimidation of witnesses or victims, retaliation against witnesses or victims, falsification of police documents, obstruction of administration of law, robbery, theft by unlawful taking, theft by extortion, theft by deception, theft from a motor vehicle, receiving stolen property, illegal searches, unlawful restraint, kidnapping, false imprisonment, criminal coercion, illegal asset forfeiture, excessive use of force, assault and battery, harassment, and criminal conspiracy.

123.    It was the policy and/or custom of Defendant City of Philadelphia to insufficiently supervise, train and/or re-train, and/or discipline against the police misconduct set forth in this Complaint.

124.    It was the policy and/or custom of Defendant City of Philadelphia to inadequately supervise, train and discipline its Police Officers, including the Defendant Police Officers, against a code of silence or "blue code" of Police Officers refusing to intervene against or provide truthful information against constitutional violations and other unlawful misconduct committed by their fellow Police Officers.

125.    The present and past Philadelphia Police Commissioners and Deputy Commissioners with policy-making authority had actual knowledge and/or constructive knowledge of the policies and customs of Philadelphia Police Department failing to sufficiently supervise, train and/or re-train, and discipline against the police misconduct set forth in this Complaint.

126.    As a result of the above-described policies and customs and/or the lack thereof, Police Officers of the City of Philadelphia, including the Defendant Police

Officers, believed that their actions would not be properly monitored by supervisory Officers and that misconduct would not be investigated or sanctioned, but would be tolerated.

WHEREFORE, Plaintiff Lisa Gregory demands judgment against Defendant City of Philadelphia in the amount of all damages, including compensatory damages and punitive damages, plus interest, injunctive relief, such other relief as appears reasonable and just, as well as reasonable attorney fees and costs under 42 U.S.C. §1988.

### COUNT VII
### Plaintiff Gary Robinson
### 42 U.S.C. § 1983
### Against Defendant Officer Jeffrey Walker
### *Malicious Prosecution*

127.    All preceding paragraphs are fully incorporated herein by specific reference as though fully set forth.

128.    On or about January 31, 2008, Plaintiff Gary Robinson was present inside a residence at 5601 Wyalusing Avenue, Philadelphia, Pennsylvania.

129.    On or about the same time, Defendant Officer Walker and other Philadelphia police officers executed a raid of the same residence on Wyalusing Avenue.

130.    Defendant Officer Walker then planted drugs inside of the residence and alleged that they belonged to Gary Robinson.

131.    Defendant Officer Walker also confiscated from Plaintiff $4,800.00 but reported recovering only part of the money.

132.    Plaintiff Gary Robinson, who had not violated any laws of the Commonwealth of Pennsylvania or any other jurisdiction, was arrested and transported to a police district where he was arraigned on the following charges:

a. Manufacture, delivery, or possession with intent to manufacture or deliver a controlled substance, pursuant to 35 P.S. §780-113; and

b. Intentional possession of a controlled substance by a person not registered to possess the controlled substance, pursuant to 35 P.S. §780-113; and

c. Use or possession of drug paraphernalia, pursuant to 35 P.S. §780-113.

133.    The Defendant Officer Walker and other Philadelphia police officers prepared and caused to be prepared police paperwork misrepresenting the events that led to the arrest of the Plaintiff Gary Robinson for the incident described in this complaint.

134.    The Defendant Officers were aware of exculpatory information about the Plaintiff Gary Robinson.

135.    The exculpatory information known to police that was not provided to Gary Robinson included the real facts and circumstances of the incident.

136.    The Defendant Officer Walker misrepresented the events that led to the arrest of Gary Robinson and the misrepresentations were intentional, malicious, in bad faith, recklessly indifferent and deliberately indifferent to Gary Robinson's rights.

137.    Gary Robinson paid for an attorney to represent him in his criminal proceeding.

138.   After a preliminary hearing, Robinson's case was held over for trial, and he pled guilty to the manufacture or possession with intent to manufacture or deliver a controlled substance, and intentional possession of a controlled substance by a person not registered, and possession of drug paraphernalia.

139.   Gary Robinson served twelve months probation and was assessed $2,271.94 in court fees for this conviction.

140.   As a result of Defendant Walker's activities as described above and his subsequent suspension, Gary Robinson's criminal case was *nolle prossed* by the Philadelphia District Attorney's Office on September 26, 2014.

141.   Plaintiff was damaged and injured as set forth above under 42 U.S.C. §1983 by Defendant Officers in that they, as described in detail in preceding paragraphs, violated Plaintiff's constitutional rights while acting under color of law.

142.   More specifically, Defendant Officers seized and arrested Gary Robinson, and instituted criminal proceedings against Gary Robinson without probable cause and with malice.

WHEREFORE, Plaintiff Gary Robinson demands judgment against Defendant Officer Jeffrey Walker in the amount of all damages, including compensatory damages and punitive damages, plus interest, injunctive relief, such other relief as appears reasonable and just, as well as reasonable attorney fees and costs under 42 U.S.C. §1988.

**COUNT VIII**
**Plaintiff Gary Robinson**
**Supplemental State Law Claim**
**Against Defendant Officer Jeffrey Walker**
***Malicious Prosecution***

143.    All preceding paragraphs are fully incorporated herein by specific reference as though fully set forth.

144.    Plaintiff Gary Robinson was damaged and injured as set forth above by Defendant Officer Walker in that he intentionally and unlawfully instituted criminal proceedings against Plaintiff without probable cause and with malice.

145.    The criminal proceedings were terminated in favor of Gary Robinson.

146.    Defendant Walker's conduct was the direct and proximate cause of Plaintiff's harm.

WHEREFORE, Plaintiff Gary Robinson demands judgment against Defendant Officer in the amount of all damages, including compensatory damages and punitive damages, plus interest, injunctive relief, such other relief as appears reasonable and just.

### COUNT IX
### Plaintiff Gary Robinson
### 42 U.S.C. § 1983
### Against Defendant City of Philadelphia

147.    All preceding paragraphs are fully incorporated herein by specific reference as though fully set forth.

148.    Plaintiff Gary Robinson was damaged and injured as set forth above under 42 U.S.C. §1983 by Defendant City of Philadelphia in that its Police Officers, as described in detail in preceding paragraphs, engaged in police misconduct in violation of Plaintiff's constitutional rights while acting under color of law.

149.    Prior to January 31, 2008, Defendant City of Philadelphia developed and maintained policies and/or customs of police misconduct exhibiting deliberate

indifference to the constitutional rights of persons in the City of Philadelphia, which caused the violation of Plaintiff's rights.

150.    It was the policy and/or custom of Defendant Police Officers to engage while on-duty in criminal conduct, including but not limited to official oppression, perjury, false swearing, unsworn falsification to authorities, false incrimination of others, fictitious reports, tampering with or fabricating physical evidence, tampering with public records or information, intimidation of witnesses or victims, retaliation against witnesses or victims, falsification of police documents, obstruction of administration of law, robbery, theft by unlawful taking, theft by extortion, theft by deception, theft from a motor vehicle, receiving stolen property, illegal searches, unlawful restraint, kidnapping, false imprisonment, criminal coercion, illegal asset forfeiture, excessive use of force, assault and battery, harassment, and criminal conspiracy.

151.    It was the policy and/or custom of Defendant City of Philadelphia to insufficiently supervise, train and/or re-train, and/or discipline against the police misconduct set forth in this Complaint.

152.    It was the policy and/or custom of Defendant City of Philadelphia to inadequately supervise, train, and discipline its Police Officers, including the Defendant Police Officers, against a code of silence or "blue code" of Police Officers refusing to intervene against or provide truthful information against constitutional violations and other unlawful misconduct committed by their fellow Police Officers.

153.    The present and past Philadelphia Police Commissioners and Deputy Commissioners with policy-making authority had actual knowledge and/or constructive knowledge of the policies and customs of Philadelphia Police Department failing to

sufficiently supervise, train and/or re-train, and discipline against the police misconduct set forth in this Complaint.

154.    As a result of the above-described policies and customs and/or the lack thereof, Police Officers of the City of Philadelphia, including the Defendant Police Officers, believed that their actions would not be properly monitored by supervisory Officers and that misconduct would not be investigated or sanctioned, but would be tolerated.

WHEREFORE, Plaintiff Gary Robinson demands judgment against Defendant City of Philadelphia in the amount of all damages, including compensatory damages and punitive damages, plus interest, injunctive relief, such other relief as appears reasonable and just, as well as reasonable attorney fees and costs under 42 U.S.C. §1988.

### COUNT X
### Plaintiff Mia McNeil
### 42 U.S.C. § 1983
### Against Defendant Officer Jeffrey Walker
### Malicious Prosecution

155.    All preceding paragraphs are fully incorporated herein by specific reference as though fully set forth.

156.    On or about November 2, 2010, Plaintiff Mia McNeil was walking outside in a neighborhood of Philadelphia, Pennsylvania.

157.    On or about the same time, Defendant Officer Walker and other Philadelphia police officers were also present in the same neighborhood.

158.    Defendant Officer Walker then approached McNeil and stopped her without legal justification.

159.   Defendant Office Walker then planted drugs on McNeil and alleged that they belonged to the Plaintiff.

160.   Plaintiff Mia McNeil, who had not violated any laws of the Commonwealth of Pennsylvania or any other jurisdiction, was arrested and transported to a police district where she was arraigned on the following charge:

a.  Intentional possession of a controlled substance by a person not registered to possess the controlled substance, pursuant to 35 P.S. §780-113.

161.   The Defendant Officer Walker caused to be prepared police paperwork misrepresenting the events that led to the arrest of the Plaintiff Mia McNeil for the incident described in this complaint.

162.   The Defendant Officer Walker was aware of exculpatory information about the Plaintiff Mia McNeil.

163.   The exculpatory information known to police that was not provided to Mia McNeil included the real facts and circumstances of the incident.

164.   The Defendant Officer Walker misrepresented the events that led to the arrest of Mia McNeil and the misrepresentations were intentional, malicious, in bad faith, recklessly indifferent and deliberately indifferent to Mia McNeil's rights.

165.   The York County Public Defender's Office represented McNeil in her criminal proceeding.

166.   After a trial, Mia McNeil was found guilty of intentional possession of a controlled substance by a person not registered to possess the controlled substance.

167.   McNeil served six months probation and was assessed $536.01 in court fees for this conviction.

29

168.    As a result of Defendant Walker's activities as described above and his subsequent suspension, Mia McNeil's criminal case was *nolle prossed* by the Philadelphia District Attorney's Office on September 26, 2014.

169.    As a direct and proximate result of the actions of Defendant Officers Walker, Plaintiff Mia McNeil was deprived of her rights, privileges and immunities under the Fourth, Fifth and Fourteenth Amendments to the United States Constitution and, in particular, the right to be free from excessive force, the right to be free from unlawful arrest, the right to be free from unjustified searches, the right to be free from malicious prosecution, and the right to due process of law.

170.    The actions and/or inactions of Defendant Officer Walker violated the constitutional rights of Mia McNeil to be free from use of excessive, unreasonable, and unjustified force against her person, the right to be free from malicious prosecution, and the right to due process of law.

171.    All actions taken by the Defendant Officer Walker in this case were taken under color of state law.

172.    As a direct and proximate result of the actions and/or inactions of the Defendant Officer Walker in this case, Mia McNeil has suffered physical pain, loss of liberty, anxiety, fear, mental harm, and financial loss.

173.    Plaintiff Mia McNeil was damaged and injured as set forth above under 42 U.S.C. §1983 by Defendant Officers in that they, as described in detail in preceding paragraphs, violated Plaintiff's constitutional rights while acting under color of law.

174.   More specifically, Defendant Officer Walker seized and arrested Mia McNeil, and instituted criminal proceedings against Mia McNeil without probable cause and with malice.

175.   The criminal proceedings were terminated in favor of Mia McNeil.

176.   The conduct of Defendant Officer Walker was the direct and proximate cause of Plaintiff Mia McNeil's harm.

WHEREFORE, Plaintiff Mia McNeil demands judgment against Defendant Officer Jeffrey Walker in the amount of all damages, including compensatory damages and punitive damages, plus interest, injunctive relief, such other relief as appears reasonable and just, as well as reasonable attorney fees and costs under 42 U.S.C. §1988.

### COUNT XI
### Plaintiff Mia McNeil
### Supplemental State Law Claim
### Against Defendant Officer Jeffrey Walker
### Malicious Prosecution

177.   All preceding paragraphs are fully incorporated herein by specific reference as though fully set forth.

178.   Plaintiff Mia McNeil was damaged and injured as set forth above by Defendant Officer Jeffrey Walker in that he intentionally and unlawfully instituted criminal proceedings against Plaintiff without probable cause and with malice.

179.   The criminal proceedings were terminated in favor of Mia McNeil.

180.   Defendants Jeffrey Walker's conduct was the direct and proximate cause of Plaintiff's harm.

WHEREFORE, Plaintiff Mia McNeil demands judgment against Defendant Officer Jeffrey Walker in the amount of all damages, including compensatory damages and punitive damages, plus interest, injunctive relief, such other relief as appears reasonable and just.

### COUNT XII
### Plaintiff Mia McNeil
### 42 U.S.C. § 1983
### Against Defendant City of Philadelphia

181.    All preceding paragraphs are fully incorporated herein by specific reference as though fully set forth.

182.    Plaintiff Mia McNeil was damaged and injured as set forth above under 42 U.S.C. §1983 by Defendant City of Philadelphia in that its Police Officers, as described in detail in preceding paragraphs, engaged in police misconduct in violation of Plaintiff's constitutional rights while acting under color of law.

183.    Prior to November 2, 2010, Defendant City of Philadelphia developed and maintained policies and/or customs of police misconduct exhibiting deliberate indifference to the constitutional rights of persons in the City of Philadelphia, which caused the violation of Plaintiff's rights.

184.    It was the policy and/or custom of Defendant Police Officers to engage while on-duty in criminal conduct, including but not limited to official oppression, perjury, false swearing, unsworn falsification to authorities, false incrimination of others, fictitious reports, tampering with or fabricating physical evidence, tampering with public records or information, intimidation of witnesses or victims, retaliation against witnesses or victims, falsification of police documents, obstruction of administration of law, robbery, theft by unlawful taking, theft by extortion, theft by deception, theft from a motor vehicle,

32

receiving stolen property, illegal searches, unlawful restraint, kidnapping, false imprisonment, criminal coercion, illegal asset forfeiture, excessive use of force, assault and battery, harassment, and criminal conspiracy.

185.    It was the policy and/or custom of Defendant City of Philadelphia to insufficiently supervise, train and/or re-train, and/or discipline against the police misconduct set forth in this Complaint.

186.    It was the policy and/or custom of Defendant City of Philadelphia to inadequately supervise, train, and discipline its Police Officers, including the Defendant Police Officers, against a code of silence or "blue code" of Police Officers refusing to intervene against or provide truthful information against constitutional violations and other unlawful misconduct committed by their fellow Police Officers.

187.    The present and past Philadelphia Police Commissioners and Deputy Commissioners with policy-making authority had actual knowledge and/or constructive knowledge of the policies and customs of Philadelphia Police Department failing to sufficiently supervise, train and/or re-train, and discipline against the police misconduct set forth in this Complaint.

188.    As a result of the above-described policies and customs and/or the lack thereof, Police Officers of the City of Philadelphia, including the Defendant Police Officers, believed that their actions would not be properly monitored by supervisory Officers and that misconduct would not be investigated or sanctioned, but would be tolerated.

WHEREFORE, Plaintiff Mia McNeil demands judgment against Defendant City of Philadelphia in the amount of all damages, including compensatory damages and

punitive damages, plus interest, injunctive relief, such other relief as appears

reasonable and just, as well as reasonable attorney fees and costs under 42 U.S.C.

§1988.

**COUNT XIII**
**Plaintiff Rozina Williams**
**42 U.S.C. § 1983**
**Against Defendant Officer Jeffrey Walker**
***Malicious Prosecution***

199.    All preceding paragraphs are fully incorporated herein by specific

reference as though fully set forth.

200.    On or about November 11, 2011, Plaintiff Rozina Williams was present

inside her residence at 1332 South Ruby Street in Philadelphia, Pennsylvania.

201.    On or about the same time, Defendant Officer Walker and other

Philadelphia police officers were also present in the same neighborhood.

202.    Defendant Officer Walker then unlawfully entered Ms. Williams' residence

and alleged the occurrence of illegal activity inside the residence.  Defendant Office

Walker then planted drugs on Rozina Williams and alleged that they belonged to the

Plaintiff.

203.    Defendant Office Walker destroyed Plaintiff Williams' personal property

inside the residence at 1332 South Ruby Street, and Defendant Office Walker illegally

confiscated $143.00 from Williams.

204.    Plaintiff Rozina Williams, who had not violated any laws of the

Commonwealth of Pennsylvania or any other jurisdiction, was arrested and transported

to a police district where she was arraigned on the following charge:

a.  Manufacture, delivery, or possession with intent to deliver or manufacture a controlled substance, pursuant to 35 P.S. §780-113.

205.   The Defendant Officer Walker caused to be prepared police paperwork misrepresenting the events that led to the arrest of the Plaintiff Rozina Williams for the incident described in this complaint.

206.   The Defendant Officer Walker was aware of exculpatory information about the Plaintiff Rozina Williams.

207.   The exculpatory information known to police that was not provided to Rozina Williams included the real facts and circumstances of the incident.

208.   The Defendant Officer Walker misrepresented the events that led to the arrest of Rozina Williams and the misrepresentations were intentional, malicious, in bad faith, recklessly indifferent and deliberately indifferent to Rozina Williams' rights.

209.   Rozina Williams paid an attorney to represent her in her criminal proceeding.

210.   After a preliminary hearing, Rozina Williams's case was held over for trial, and she pled guilty to possession with the intent to deliver a controlled substance.

211.   Rozina Williams served three years probation and was assessed $115.00 in court fees for this conviction.

212.   As a result of Defendant Walker's activities as described above and his subsequent suspension, Rozina Williams's criminal case was *nolle prossed* by the Philadelphia District Attorney's Office on September 26, 2014.

213.   As a direct and proximate result of the actions of Defendant Officers Walker, Plaintiff Rozina Williams was deprived of her rights, privileges and immunities

under the Fourth, Fifth and Fourteenth Amendments to the United States Constitution and, in particular, the right to be free from excessive force, the right to be free from unlawful arrest, the right to be free from unjustified searches, the right to be free from malicious prosecution, and the right to due process of law.

214.    The actions and/or inactions of Defendant Officer Walker violated the constitutional rights of Rozina Williams to be free from use of excessive, unreasonable, and unjustified force against her person, the right to be free from malicious prosecution, and the right to due process of law.

215.    All actions taken by the Defendant Officer Walker in this case were taken under color of state law.

216.    As a direct and proximate result of the actions and/or inactions of the Defendant Officer Walker in this case, Rozina Williams has suffered physical pain, loss of liberty, anxiety, fear, mental harm, and financial loss.

217.    Plaintiff Rozina Williams was damaged and injured as set forth above under 42 U.S.C. §1983 by Defendant Officers in that they, as described in detail in preceding paragraphs, violated Plaintiff's constitutional rights while acting under color of law.

218.    More specifically, Defendant Officer Walker seized and arrested Rozina Williams, and instituted criminal proceedings against Mia McNeil without probable cause and with malice.

219.    The criminal proceedings were terminated in favor of Rozina Williams.

220.    The conduct of Defendant Officer Walker was the direct and proximate cause of Plaintiff Rozina Williams's harm.

WHEREFORE, Plaintiff Rozina Williams demands judgment against Defendant Officer Jeffrey Walker in the amount of all damages, including compensatory damages and punitive damages, plus interest, injunctive relief, such other relief as appears reasonable and just, as well as reasonable attorney fees and costs under 42 U.S.C. §1988.

### COUNT XIV
### Plaintiff Rozina Williams
### Supplemental State Law Claim
### Against Defendant Officer Jeffrey Walker
### *Malicious Prosecution*

221.   All preceding paragraphs are fully incorporated herein by specific reference as though fully set forth.

222.   Plaintiff Rozina Williams was damaged and injured as set forth above by Defendant Officer Walker in that he intentionally and unlawfully instituted criminal proceedings against Plaintiff without probable cause and with malice.

223.   The criminal proceedings were terminated in favor of Rozina Williams.

224.   Defendant Walker's conduct was the direct and proximate cause of Plaintiff's harm.

WHEREFORE, Plaintiff Rozina Williams demands judgment against Defendant Officer in the amount of all damages, including compensatory damages and punitive damages, plus interest, injunctive relief, such other relief as appears reasonable and just.

### COUNT XV
### Plaintiff Rozina Williams
### 42 U.S.C. § 1983 Against Defendant City of Philadelphia

225.   All preceding paragraphs are fully incorporated herein by specific reference as though fully set forth.

226.    Plaintiff Rozina Williams was damaged and injured as set forth above under 42 U.S.C. §1983 by Defendant City of Philadelphia in that its Police Officers, as described in detail in preceding paragraphs, engaged in police misconduct in violation of Plaintiff's constitutional rights while acting under color of law.

227.    Prior to November 11, 2010, Defendant City of Philadelphia developed and maintained policies and/or customs of police misconduct exhibiting deliberate indifference to the constitutional rights of persons in the City of Philadelphia, which caused the violation of Plaintiff's rights.

228.    It was the policy and/or custom of Defendant Police Officers to engage while on-duty in criminal conduct, including but not limited to official oppression, perjury, false swearing, unsworn falsification to authorities, false incrimination of others, fictitious reports, tampering with or fabricating physical evidence, tampering with public records or information, intimidation of witnesses or victims, retaliation against witnesses or victims, falsification of police documents, obstruction of administration of law, robbery, theft by unlawful taking, theft by extortion, theft by deception, theft from a motor vehicle, receiving stolen property, illegal searches, unlawful restraint, kidnapping, false imprisonment, criminal coercion, illegal asset forfeiture, excessive use of force, assault and battery, harassment, and criminal conspiracy.

229.    It was the policy and/or custom of Defendant City of Philadelphia to insufficiently supervise, train and/or re-train, and/or discipline against the police misconduct set forth in this Complaint.

230.    It was the policy and/or custom of Defendant City of Philadelphia to inadequately supervise, train and discipline its Police Officers, including the Defendant

Police Officers, against a code of silence or "blue code" of Police Officers refusing to intervene against or provide truthful information against constitutional violations and other unlawful misconduct committed by their fellow Police Officers.

231.    The present and past Philadelphia Police Commissioners and Deputy Commissioners with policy-making authority had actual knowledge and/or constructive knowledge of the policies and customs of Philadelphia Police Department failing to sufficiently supervise, train and/or re-train, and discipline against the police misconduct set forth in this Complaint.

232.    As a result of the above-described policies and customs and/or the lack thereof, Police Officers of the City of Philadelphia, including the Defendant Police Officers, believed that their actions would not be properly monitored by supervisory Officers and that misconduct would not be investigated or sanctioned, but would be tolerated.

WHEREFORE, Plaintiff Rozina Williams demands judgment against Defendant City of Philadelphia in the amount of all damages, including compensatory damages and punitive damages, plus interest, injunctive relief, such other relief as appears reasonable and just, as well as reasonable attorney fees and costs under 42 U.S.C. §1988.

## COUNT XVI
**Plaintiff Juvar Woodson**
**42 U.S.C. § 1983**
**Against Defendant Officer Jeffrey Walker**
*Malicious Prosecution*

233.    All preceding paragraphs are fully incorporated herein by specific reference as though fully set forth.

39

234.   On or about November 30, 2010, Plaintiff Juvar Woodson was present in a Philadelphia Pennsylvania neighborhood near North 42nd Street and Leidy Avenue.

235.   On or about the same time, Defendant Officer Walker and other Philadelphia police officers were also present in the same neighborhood.

236.   Defendant Officer Walker then approached Woodson and stopped him without legal justification.

237.   Defendant Officer Walker then planted drugs on Woodson and alleged that they belonged to the Plaintiff Juvar Woodson.

238.   Plaintiff Juvar Woodson, who had not violated any laws of the Commonwealth of Pennsylvania or any other jurisdiction, was arrested and transported to a police district where he was arraigned on the following charge:

     a.  Manufacture, delivery, or possession with intent to deliver or manufacture of a controlled substance, pursuant to 35 P.S. §780-113.

239.   The Defendant Officer Walker caused to be prepared police paperwork misrepresenting the events that led to the arrest of the Plaintiff Juvar Woodson for the incident described in this complaint.

240.   The Defendant Officers were aware of exculpatory information about Woodson, but the exculpatory information known to police that was not provided to Woodson.

241.   The Defendant Officers misrepresented the events that led to the arrest of Juvar Woodson and the misrepresentations were intentional, malicious, in bad faith, recklessly indifferent and deliberately indifferent to Juvar Woodson's rights.

40

242.   Juvar Woodson was represented by private counsel in his criminal proceeding.

243.   After a municipal court trial, Juvar Woodson was found guilty of the manufacture, deliver, or possession of a controlled substance with intent to deliver or manufacture.

244.   After appealing his conviction to common pleas court, Juvar Woodson pled guilty to the manufacture, deliver, possession of a controlled substance with intent to deliver or manufacture.

245.   Juvar Woodson was incarcerated 3 days, served 18 months probation, and was assessed $1,812.44 in court costs for this conviction.

246.   As a result of Defendant Walker's activities as described above and his subsequent suspension, Juvar Woodson's criminal case was *nolle prossed* by the Philadelphia District Attorney's Office on February 28, 2014.

247.   Plaintiff Juvar Woodson was damaged and injured as set forth above under 42 U.S.C. §1983 by Defendant Officers in that they, as described in detail in preceding paragraphs, violated Plaintiff's constitutional rights while acting under color of law.

248.   More specifically, Defendant Officer Walker seized and arrested Juvar Woodson, and instituted criminal proceedings against Juvar Woodson without probable cause and with malice.

249.   The criminal proceedings terminated in favor of Juvar Woodson.

250.   Defendant Officer Walker's conduct was the direct and proximate cause of Plaintiff Juvar Woodson's harm.

WHEREFORE, Plaintiff Juvar Woodson demands judgment against Defendant Officer Jeffrey Walker in the amount of all damages, including compensatory damages and punitive damages, plus interest, injunctive relief, such other relief as appears reasonable and just, as well as reasonable attorney fees and costs under 42 U.S.C. §1988.

## COUNT XVII
### Plaintiff Juvar Woodson
### Supplemental State Law Claim
### Against Defendant Officer Jeffrey Walker
### *Malicious Prosecution*

251.    All preceding paragraphs are fully incorporated herein by specific reference as though fully set forth.

252.    Plaintiff Juvar Woodson was damaged and injured as set forth above by Defendant Officer Walker in that they intentionally and unlawfully instituted criminal proceedings against Plaintiff without probable cause and with malice.

253.    The criminal proceedings were terminated in favor of Juvar Woodson.

254.    Defendant's conduct was the direct and proximate cause of Plaintiff's harm.

WHEREFORE, Plaintiff Juvar Woodson demands judgment against Defendant Officer Jeffrey Walker in the amount of all damages, including compensatory damages and punitive damages, plus interest, injunctive relief, such other relief as appears reasonable and just.

## COUNT XVIII
### Plaintiff Juvar Woodson
### 42 U.S.C. § 1983
### Against Defendant City of Philadelphia

255.    All preceding paragraphs are fully incorporated herein by specific reference as though fully set forth.

256.    Plaintiff Juvar Woodson was damaged and injured as set forth above under 42 U.S.C. §1983 by Defendant City of Philadelphia in that its Police Officers, as described in detail in preceding paragraphs, engaged in police misconduct in violation of Plaintiff's constitutional rights while acting under color of law.

257.    Prior to November 30, 2010, Defendant City of Philadelphia developed and maintained policies and/or customs of police misconduct exhibiting deliberate indifference to the constitutional rights of persons in the City of Philadelphia, which caused the violation of Plaintiff's rights.

258.    It was the policy and/or custom of Defendant Police Officers to engage while on-duty in criminal conduct, including but not limited to official oppression, perjury, false swearing, unsworn falsification to authorities, false incrimination of others, fictitious reports, tampering with or fabricating physical evidence, tampering with public records or information, intimidation of witnesses or victims, retaliation against witnesses or victims, falsification of police documents, obstruction of administration of law, robbery, theft by unlawful taking, theft by extortion, theft by deception, theft from a motor vehicle, receiving stolen property, illegal searches, unlawful restraint, kidnapping, false imprisonment, criminal coercion, illegal asset forfeiture, excessive use of force, assault and battery, harassment, and criminal conspiracy.

259.    It was the policy and/or custom of Defendant City of Philadelphia to insufficiently supervise, train and/or re-train, and/or discipline against the police misconduct set forth in this Complaint.

260.   It was the policy and/or custom of Defendant City of Philadelphia to inadequately supervise, train and discipline its Police Officers, including the Defendant Police Officers, against a code of silence or "blue code" of Police Officers refusing to intervene against or provide truthful information against constitutional violations and other unlawful misconduct committed by their fellow Police Officers.

261.   The present and past Philadelphia Police Commissioners and Deputy Commissioners with policy-making authority had actual knowledge and/or constructive knowledge of the policies and customs of Philadelphia Police Department failing to sufficiently supervise, train and/or re-train, and discipline against the police misconduct set forth in this Complaint.

262.   As a result of the above-described policies and customs and/or the lack thereof, Police Officers of the City of Philadelphia, including the Defendant Police Officers, believed that their actions would not be properly monitored by supervisory Officers and that misconduct would not be investigated or sanctioned, but would be tolerated.

WHEREFORE, Plaintiff Juvar Woodson demands judgment against Defendant City of Philadelphia in the amount of all damages, including compensatory damages and punitive damages, plus interest, injunctive relief, such other relief as appears reasonable and just, as well as reasonable attorney fees and costs under 42 U.S.C. §1988.

**COUNT XIX**
**Plaintiff Rodney Morgan**
**42 U.S.C. § 1983**
**Against Defendant Officer Jeffrey Walker**
***Malicious Prosecution***

263.    All preceding paragraphs are fully incorporated herein by specific reference as though fully set forth.

264.    On or about January 18, 2011, Plaintiff Rodney Morgan was present in a residence at 5121 Reno Street in Philadelphia Pennsylvania.

265.    On or about the same time, Defendant Officer Walker and other Philadelphia police officers were also present in the same neighborhood.

266.    Defendant Officer Walker then banged on the front door of the 5121 Reno Street residence.  Defendant Officer Walker demanded money from Plaintiff Rodney Morgan.

267.    Defendant Officer Walker then planted drugs on Morgan and alleged that they belonged to the Plaintiff Rodney Morgan.

268.    Plaintiff Rodney Morgan, who had not violated any laws of the Commonwealth of Pennsylvania or any other jurisdiction, was arrested and transported to a police district where he was arraigned on the following charge:

     a.  Manufacture, delivery, or possession with intent to deliver or manufacture of a controlled substance, pursuant to 35 P.S. §780-113.

269.    The Defendant Officer Walker caused to be prepared police paperwork misrepresenting the events that led to the arrest of the Plaintiff Rodney Morgan for the incident described in this complaint.

270.    The Defendant Officers were aware of exculpatory information about Morgan.

271.    The exculpatory information known to police that was not provided to Rodney Morgan included the real facts and circumstances of the incident.

272.    The Defendant Officers misrepresented the events that led to the arrest of Rodney Morgan and the misrepresentations were intentional, malicious, in bad faith, recklessly indifferent and deliberately indifferent to Rodney Morgan's rights.

273.    The Defender Association of Philadelphia represented Rodney Morgan in his criminal proceeding.

274.    After a municipal court trial, Rodney Morgan was found guilty of the manufacture, deliver, or possession of a controlled substance with intent to deliver or manufacture.

275.    Rodney Morgan served 18 months probation and was assessed $1,176.44 in court fees for this conviction.

276.    As a result of Defendant Walker's activities as described above and his subsequent suspension, Rodney Morgan's criminal case was *nolle prossed* by the Philadelphia District Attorney's Office on September 26, 2014.

277.    Plaintiff Rodney Morgan was damaged and injured as set forth above under 42 U.S.C. §1983 by Defendant Officers in that they, as described in detail in preceding paragraphs, violated Plaintiff's constitutional rights while acting under color of law.

278.    More specifically, Defendant Officer Walker seized and arrested Rodney Morgan, and instituted criminal proceedings against Rodney Morgan without probable cause and with malice.

279.    The criminal proceedings terminated in favor of Rodney Morgan.

280.    Defendant Officer Walker's conduct was the direct and proximate cause of Plaintiff Rodney Morgan's harm.

WHEREFORE, Plaintiff Rodney Morgan demands judgment against Defendant Officer Jeffrey Walker in the amount of all damages, including compensatory damages and punitive damages, plus interest, injunctive relief, such other relief as appears reasonable and just, as well as reasonable attorney fees and costs under 42 U.S.C. §1988.

**COUNT XX**
**Plaintiff Rodney Morgan**
**Supplemental State Law Claim**
**Against Defendant Officer Jeffrey Walker**
***Malicious Prosecution***

281.   All preceding paragraphs are fully incorporated herein by specific reference as though fully set forth.

282.   Plaintiff Rodney Morgan was damaged and injured as set forth above by Defendant Officer Walker in that he intentionally and unlawfully instituted criminal proceedings against Plaintiff without probable cause and with malice.

283.   The criminal proceedings were terminated in favor of Rodney Morgan

284.   Defendant Walker's conduct was the direct and proximate cause of Plaintiff's harm.

WHEREFORE, Plaintiff Rodney Morgan demands judgment against Defendant Officer for all damages, including compensatory damages and punitive damages, plus interest, injunctive relief, such other relief as appears reasonable and just.

**COUNT XXI**
**Plaintiff Rodney Morgan**
**42 U.S.C. § 1983 Against Defendant City of Philadelphia**

285.   All preceding paragraphs are fully incorporated herein by specific reference as though fully set forth.

286.   Plaintiff Rodney Morgan was damaged and injured as set forth above under 42 U.S.C. §1983 by Defendant City of Philadelphia in that its Police Officers, as described in detail in preceding paragraphs, engaged in police misconduct in violation of Plaintiff's constitutional rights while acting under color of law.

287.   Prior to January 18, 2011, Defendant City of Philadelphia developed and maintained policies and/or customs of police misconduct exhibiting deliberate indifference to the constitutional rights of persons in the City of Philadelphia, which caused the violation of Plaintiff's rights.

288.   It was the policy and/or custom of Defendant Police Officers to engage while on-duty in criminal conduct, including but not limited to official oppression, perjury, false swearing, unsworn falsification to authorities, false incrimination of others, fictitious reports, tampering with or fabricating physical evidence, tampering with public records or information, intimidation of witnesses or victims, retaliation against witnesses or victims, falsification of police documents, obstruction of administration of law, robbery, theft by unlawful taking, theft by extortion, theft by deception, theft from a motor vehicle, receiving stolen property, illegal searches, unlawful restraint, kidnapping, false imprisonment, criminal coercion, illegal asset forfeiture, excessive use of force, assault and battery, harassment, and criminal conspiracy.

289.   It was the policy and/or custom of Defendant City of Philadelphia to insufficiently supervise, train and/or re-train, and/or discipline against the police misconduct set forth in this Complaint.

290.   It was the policy and/or custom of Defendant City of Philadelphia to inadequately supervise, train and discipline its Police Officers, including the Defendant

Police Officers, against a code of silence or "blue code" of Police Officers refusing to intervene against or provide truthful information against constitutional violations and other unlawful misconduct committed by their fellow Police Officers.

291.    The present and past Philadelphia Police Commissioners and Deputy Commissioners with policy-making authority had actual knowledge and/or constructive knowledge of the policies and customs of Philadelphia Police Department failing to sufficiently supervise, train and/or re-train, and discipline against the police misconduct set forth in this Complaint.

292.    As a result of the above-described policies and customs and/or the lack thereof, Police Officers of the City of Philadelphia, including the Defendant Police Officers, believed that their actions would not be properly monitored by supervisory Officers and that misconduct would not be investigated or sanctioned, but would be tolerated.

WHEREFORE, Plaintiff Rodney Morgan demands judgment against Defendant City of Philadelphia in the amount of all damages, including compensatory damages and punitive damages, plus interest, injunctive relief, such other relief as appears reasonable and just, as well as reasonable attorney fees and costs under 42 U.S.C. §1988.

**COUNT XXII**
**Plaintiff Joyce Robinson**
**42 U.S.C. § 1983**
**Against Defendant Officer Jeffrey Walker,**
***Malicious Prosecution***

293.    All preceding paragraphs are fully incorporated herein by specific reference as though fully set forth.